**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MARTHA CLAMPITT,

An Individual,

Plaintiff,

v.

RESORT LIFESTYLE COMMUNITIES,

A Nebraska Corporation

and

SKY POINTE RETIREMENT COMMUNITIES LLC,
d/b/a SKY POINTE RETIREMENT RESORT.

A Nebraska Corporation

STEVE MUELLER,

An Individual.

Defendants.

---

**COMPLAINT AND REQUEST FOR JURY TRIAL**

---

Martha Clampitt [Clampitt], Plaintiff, through her attorney, Steven L. Murray of Murray Law, LLC, submits her Complaint and Request for Jury Trial against Defendants, Resort Lifestyle Communities, Skye Pointe Retirement Communities LLC, d/b/a Sky Pointe Retirement Resort [SPR], and Steve Mueller, Chief Operating Officer

of Resort Lifestyle Communities and/or representative of Resort Lifestyle Communities, in his individual capacity.

## I. INTRODUCTION

1. This case is an employment discrimination action under (1) the Americans with Disabilities Act of 1990 [ADA], 42 U.S.C. § 12101, et seq., as amended, including the Americans with Disabilities Act Amendments Act of 2008, (2) Title VII of the Civil Rights Act of 1964 [Title VII], 42 U.S.C. § 2000e, et seq., as amended, (3) the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C. § 621, et seq., as amended, and (4) the Colorado Anti-Discrimination Act [CADA], C.R.S. § 24-34-402, et seq., as amended.

2. Clampitt is a woman, sixty-five years of age.

3. Clampitt is a former employee of Defendants Resort Lifestyle Communities, and Skye Pointe Retirement Communities LLC, d/b/a Sky Pointe Retirement Resort [corporate Defendants].

4. Clampitt served as a Community Manager for the corporate Defendants' senior living centers across the nation. She managed these properties as a co-Community Manager with her husband, Roger Whitener [Whitener].

5. At the time of her employment termination, Clampitt was managing the corporate Defendants' senior living center property in Littleton, Colorado, named: "*Resort Lifestyle Communities, Sky Pointe Retirement Resort*." ["RLC/SPR Littleton Senior Center" or "Senior Living Center"].

6. On November 7, 2023, the Defendants took multiple adverse employment actions against Clampitt, including but not limited to (1) terminating her employment, (2) ordering Clampitt and her husband to leave the property in five days, knowing they had no home or alternative residence, and her husband was severely ill; and (3) telling her, "**you do not fit our model anymore**" and "**there is no place for you**," and thereby effectively banning her from all employment with the corporate Defendants in any position in any location.

## II. PARTIES

7. Clampitt is a United States citizen.

8. At the time of the events in issue, Clampitt lived and worked in Littleton, Colorado. Currently, she lives in Virginia.

9. Defendant Resort Lifestyle Communities [RLC] is a Nebraska corporation with its headquarters in Lincoln, Nebraska.

10. RLC conducts business in Colorado, with a registered agent in Brighton, Colorado.

11. Defendant Skye Pointe Retirement Communities LLC, d/b/a Skye Pointe Retirement Communities LLC, [SPR], is a Nebraska corporation with its headquarters in Lincoln, Nebraska.

12. SPR conducts business in Colorado, with a registered agent in Brighton, Colorado.

13. Defendant Mueller conducted business in the Judicial District of this Court. He traveled to Littleton, Colorado, to meet with Clampitt to take the multiple adverse

employment actions against her.

14. Clampitt worked for Sky Pointe Retirement Community LLC and Resort Lifestyles Communities.

15. RLC and SPR are intertwined corporate entities.

16. RLC and SPR have the same: (1) business address in Lincoln, Nebraska: 701 S. 82nd Street, Lincoln, Nebraska, and (2) registered business agent in Colorado: Registered Agency Solutions 36 S. 18th Avenue, Suite D, Brighton, CO, 80601.

17. During Clampitt's work at the RLC/SPR Littleton Senior Center, RLC and SPR each issued her (1) a W-2 tax form in 2023, and (2) pay checks in 2023.

18. RLC assigned Clampitt to her multiple Community Manager locations.

19. Joe Armstrong, RLC Director of Field Operations, was her direct supervisor.

20. RLC officials communicated with Clampitt on employment-related issues during her employment. These officials included, but were not limited to, Arlin Halstead, Breck Collingsworth, and Steve Mueller.

21. At all times in issue, Arlin Halstead served as the Chief Executive Officer of RLC.

22. At all times in issue, Breck Collingsworth was the Owner of RLC.

23. At all times in issue, Steve Mueller served as the Chief Operating Officer of RLC and/or an official and/or manager with RLC.

24. As described in detail herein, on November 7, 2023, the corporate Defendants and Defendant Mueller took multiple adverse actions against Clampitt, including but not limited to terminating her employment.

## III. JURISDICTION AND VENUE

25. This Court has jurisdiction under 28 U.S.C. §§ 1331,1343(a)(3)(4).

26. Jurisdiction is asserted under the ADA, 42 U.S.C. § 12117(a), and Title VII, 42 U.S.C. §§ 2000e, 2000e-5, and 2000e-5(f)(1)(3), including the Civil Rights Act of 1991, 42 U.S.C. § 1981a (a)(1), (b)(2)(3)(D), (c)(1)(2), and (d)(1)(A)(2), the ADEA, 29 U.S.C. § 626(b), and the CADA, C.R.S. § 24-34-306.

27. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Plaintiff's four claims under CADA.

28. Venue is proper in this Court's Judicial District.

29. The claims in issue, including all alleged unlawful employment actions, arose in the Judicial District of this Court.

30. At all times in issue, Clampitt lived and worked within this Court's Judicial District.

31. At all times in issue, the corporate Defendants and Defendant Mueller conducted business within this Court's Judicial District.

32. Title VII includes a specific venue provision, 42 U.S.C. § 2000e-5(f)(3).

33. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because (1) the unlawful employment practices alleged to have been committed by Defendants were committed in Colorado, within this Court's Judicial District, (2) Clampitt, the aggrieved person, would have worked in Colorado, within this Court's Judicial District, but for the alleged unlawful employment practices and (3) the Defendants conduct business in Colorado and are thereby found in the state for purposes of Title VII.

34. The plaintiff's ADA claim is governed by the specific venue provision of 42 U.S.C. § 2000e-5(f)(3). See 42 U.S.C. § 12117(a) [establishing that the powers, remedies, and procedures outlined in Title VII, 42 U.S.C. § 2000e-5, shall be the powers, remedies, and procedures this subchapter provides to any person alleging discrimination on the basis of disability in violation of any provision of this chapter].

35. Venue for the plaintiff's ADEA claim is governed by 28 U.S.C. § 1391(b)(2).

36. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to all Plaintiff's claims occurred within the Judicial District of this Court.

## IV. ADMINISTRATIVE PROCEDURES

37. Before filing this action, Clampitt timely, properly, and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

38. Clampitt filed her charges against RLC and SPR with the Colorado Civil Rights Division [CCRD], which were dually filed with the Equal Employment Opportunity Commission. [EEOC].

39. Clampitt alleged discrimination by the Defendants violating the ADA, Title VII, ADEA, and the CADA, in her charges with the CCRD/EEOC.

40. On January 15, 2025, the CCRD emailed Notices of Early Right to Sue letters concerning Clampitt's CCRD charges against RLC and SPR.

41. On April 10, 2025, the CCRD emailed Amended Notices of Early Right to Sue letters concerning Clampitt's CCRD charges against RLC and SPR.

42. On February 3, 2025, the EEOC mailed Notice of Right to Sue letters to

Clampitt and emailed her counsel, concerning her EEOC charges against RLC and SPR.

43. This action is timely filed because it is filed within ninety days of Clampitt's receipt of the CCRD Notices of Early Right to Sue letters and the EEOC Notice of Right to Sue letters for her charges against RLC and SPR.

## V. GENERAL ALLEGATIONS

44. The corporate Defendants employed Clampitt from January 2019 through November 7, 2023.

45. Clampitt served as a Community Manager of multiple RLC Communities. She served in these positions with her husband, Roger Whitener [Whitener].

### A. First Period of Employment at RLC/SPR Littleton Senior Center

46. Before the period in issue, RLC directed Clampitt and her husband to serve as Community Managers in a new community, the Sky Pointe Retirement Resort in Littleton, Colorado.

47. From May 2019 through December 2019, Clampitt and her husband lived in an RLC-provided apartment. They worked in an RLC trailer on the property until the facility opened on or about December 22, 2019. When the facility opened, they moved into a new two-bedroom apartment in the community. They served as Community Managers until March 2021, following an RLC directive and accepting a new assignment from RLC in Virginia.

48. Clampitt and her husband served as Community Managers at an RLC senior living facility in Virginia until October 2022, when they followed RLC's directive to return

to RLC/SPR Littleton Senior Center.

### B. Key Second Period of Employment at RLC/SPR Littleton Senior Center: October 2022-November 2023

49. In October 2022, Clampitt and Whitener began serving as Community Managers at the RLC/SPR Littleton Senior Center for the second time.

50. The Center has about 128 apartments with over 150 tenants.

51. Clampitt's salary was about $68,000.00, plus a $580.00 monthly insurance stipend.

52. RLC provided Clampitt and her husband with housing at the RLC/SPR Littleton Senior Center. The estimated market rent for their apartment is $6500.00 per month.

#### *(1) January 2023 – May 2023*

53. In January 2023, Whitener received a diagnosis of liver cancer.

54. In February 2023, Whitener began receiving radiation treatment for his cancer in Phoenix, Arizona.

55. In mid-April 2023, Clampitt and Whitener moved to Phoenix for Whitener to continue treatment and wait for a liver transplant. RLC approved this relocation for Whitener’s treatment.

56. Whitener received a liver transplant on April 29, 2023. He continued receiving care in Phoenix through June 2023, when he and Clampitt returned to the RLC/SPR Littleton Senior Center.

***(2) June 2023 – November 2023***

57. Upon Clampitt and Whitener's return to the RLC/SPR Littleton Senior Center in June 2023, Clampitt worked full-time. Whitener did not work because of his illness.

58. Clampitt worked full-time and performed all her duties from June 2023 through November 7, 2023.

59. In August 2023, RLC assigned Panda Hirabayashi, a male, as a Special Assignment Manager [SAM] to Sky Pointe. He functioned in the same role as a Community Manager.

60. Clampitt and Hirabayashi worked well together. They effectively performed all the duties and delivered all the services previously performed and delivered by Clampitt and her husband. There was no drop in the efficiency and quality of services RLC/SPR Littleton Senior Center provided to its residents and the community.

61. At no time did Whitener: (1) appear in the RLC/SPR Littleton Senior Center in any manner embarrassing to him, the RLC/SPR Littleton Senior Center, RLC, SPR, or any community member or visitor in terms of his appearance or conduct; or (2) engage in any misconduct.

***(3) November 6-7, 2023: Termination of Employment***

62. On November 6, 2023, Mueller sent Clampitt a text message, telling her he was in town with Halstead, and they wanted to stop by the next morning, November 7, 2023.

63. On or about 8:00 a.m. on November 7, 2023, Mueller and Halstead met with Clampitt at the RLC/SPR Littleton Senior Center. They requested Clampitt to meet in a

conference room rather than her office or the lobby.

64. In the conference room, Mueller repeatedly told Ms. Clampitt the reason for the meeting, stating: “**You do not fit our model anymore.”**

65. Defendants did not describe their model to Clampitt; the model which they applied to Clampitt to terminate her employment and bar her from employment in any capactiy within the RLC/SPR organizations.

66. Clampitt replied: "You must be kidding," and "I know there is a place for me at RLC."

67. Mueller insisted there was no place for her at RLC. When she responded, "There has to be," he replied: "You are not listening to me; in three hours, there will be new managers here to replace you."

68. Mueller and Clampitt continued with a similar exchange.

69. Clampitt explained that RLC had a Special Assignment Manager, Panda Hirabayashi, working at the RLC/SPR Littleton Senior Center, and everything was running well.

70. Clampitt told Mueller and Halstead that the Defendants had assigned Assistant Managers and Special Assignment Managers to other Community Managers when one Community Manager could not work.

71. Defendants, through Mueller, responded to Clampitt: “We are not doing that with you.

72. The Defendants had other Community Managers who RLC/SPR had assigned Assistant Managers and Special Assignment Managers to work with when

one co-Community Manager could not work.

73. Clampitt is aware of RLC/SPR assigning a male Community Manager an Assistant Manager or Special Assignment Manager to work with because the Community Manager's wife (a woman) could not work.

74. Clampitt is aware of Panda Hirabayashi, a male, serving as a Community Manager. When his co-Community Manager could no longer serve in her position, RLC/SPR assigned him to a Special Assignment Manager [SAM] position.

75. The corporate Defendants and Defendant told Clampitt (1) "**you do not fit our model anymore**," (2) "**there is no place for you**," in the RLC/SPR organizations, and (3) RLC would not assign an Assistant Manager or Special Assignment Manager to work with Clampitt at RLC/SPR Littleton Senior Center or any Center in the RLC/SPR organizations.

76. Mueller told Clampitt RLC would pay her salary and benefits until February 2024.

77. Mueller explained that RLC requires an employee terminated for cause to move out of the property in three days; however, it did not require her to move in five days, not three days.

78. Mueller told her, "You took that better than I thought you would." At this point, Clampitt began to cry.

79. Clampitt walked the two men out of the property. In the lobby, Halstead said, "**Everything looks good inside and outside, and you have done a great job**."

80. Clampitt replied: "You have got to be kidding." Mr. Halstead replied that his statement was "not appropriate to say."

81. Clampitt performed her duties satisfactorily. She did not engage in any improper or unprofessional conduct.

82. Defendants replaced Clampitt and her husband as Community Managers with David Diffenderfer and Teri Bradshaw, a woman.

83. Neither Diffenderfer nor Branshaw is disabled. Diffenderfer and Bradshaw are younger than Clampitt.

**C. November 8, 2023 - February 15, 2024**

84. Clampitt and Whitener left Sky Pointe. They moved from Colorado to Virginia from November 8-12, 2023.

85. RLC financially assisted Clampitt and Whitener with their move by paying for their travel expenses and a POD storage service.

86. RLC paid Ms. Clampitt's salary for (1) November - December 2023, (2) January 2024, and (3) February 1-5, 2024.

87. As a direct, foreseeable, and proximate result of Defendants' unlawful, intentional discrimination, Clampitt suffered compensatory damages and injuries, including but not limited to emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, fear, and loss of enjoyment of life.

88. As a direct, foreseeable, and proximate result of Defendants' unlawful, intentional discrimination, Clampitt suffered economic damages and losses, including but not limited to lost earnings and potential earnings, including an actual loss of wages,

income, benefits, diminution of earning capacity, loss of actual retirement benefits, and future monetary losses.

89. Defendants' unlawful employment practices were willful or done with malice or reckless indifference to Clampitt's rights under the laws of the United States to be free from disability, sex, and age discrimination in employment.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM

### [Unlawful Disability Discrimination in Violation of the ADA]

90. Clampitt incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

91. This First Claim is for unlawful disability discrimination under the ADA based on the Defendants' discrimination against Clampitt, a qualified individual under the Act, because of the known disability of Whitener, her husband, with whom Clampitt is known to have a relationship and association. 42 U.S.C. § 12112(a); 42 U.S.C. § 12112(b)(4).

92. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability regarding job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

93. The ADA's term "discriminate against a qualified individual on the basis of disability" specifically includes: "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 42

U.S.C. § 12112(b)(4).

94. Under the ADA, it is unlawful to discriminate against an employee because of her association with a person with a disability.

95. The ADA association discrimination claim is intended to protect qualified individuals from adverse job actions based on unfounded stereotypes and assumptions arising from the employees' relationships with particular disabled people.

96. The Defendants' reliance on Clampitt "**not fitting [their] model anymore**" is reliance on a stereotype which pertains to Clampitt's association with her husband, who is disabled. Before Clampitt's husband became disabled, the Defendants had no problems with her performance or continued service as a Community Manager.

97. At the time of Defendants' adverse employment actions, Clampitt was "qualified" for (1) the Community Manager position at the RLC/SPR Littleton Senior Center, (2) the Community Manager position at the RLC/SPR Littleton Senior Center serving with a Special Assignment Manager or an Assistant Community Manager, (3) Community Manager positions at other locations within the RLC/SPR organizations, and (4) Community Manager positions at other locations within the RLC/SPR organizations, serving with a Special Assignment Manager or an Assistant Community Manager.

***(1) Defendants' Adverse Employment Actions***

98. The corporate Defendants, through Defendant Mueller, with Halstead present, subjected Clampitt to adverse employment actions by

(1) Terminating her employment.

(2) Requiring her to leave the property in five days knowing she had no home or residence, and her husband was severely ill.

(3) Refusing to permit her to continue working as the Community Manager at the RLC/SPR Littleton Senior Center with a Special Assignment Manager or Assistant Manager assigned by RLC/SPR to work with her.

(4) Stating "**you do not fit our model anymore**" and "**there is no place for you,**" Defendants effectively:

(a) Refused to permit her to continue working as the Community Manager at any RLC/SPR Senior Center in any location.

(b) Refused to permit her to continue working as a Community Manager at any RLC/SPR Senior Center in any location with a Special Assignment Manager or Assistant Manager assigned by RLC/SPR to work with her.

(c) Refused to provide her employment in any capacity anywhere in the RLC/SPR organizations.

(d) Barred and prohibited her from applying for any position in any capacity in any location in the RLC/SPR organizations.

(e) Banned her from employment in any position in any capacity in any location in the RLC/SPR organizations.

99. Defendants knew at all relevant times, including at the time of their adverse employment actions against Clampitt, that (1) her husband had a disability, (2) she associated with her husband and (3) they lived together on the RLC/SPR Littleton Senior Center property.

100. When Defendants told Clampitt she must leave the property with her husband and terminated her employment, Clampitt's husband was disabled. He had severe medical conditions harming his kidneys and liver functions. He had liver cancer, and he was recovering from a liver transplant and related medical conditions.

101. The Defendants were explicitly aware of Whitener's disability and his impairments from his disability.

102. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

103. Defendants' justifications for the adverse employment actions are unworthy of credence, and Defendants did not act for any asserted non-discriminatory reasons.

104. Upon information and belief, the Defendants treated Community Managers, who did not have co-Community Managers who were disabled, more favorably than the Defendants treated Clampitt.

105. Upon information and belief, the Defendants treated Community Managers who had co-Community Managers who could not continue working as co-Community Managers for reasons other than a disability, more favorably than the Defendants treated Clampitt.

106. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that her association with her husband, a disabled person, was a determining factor in Defendants' decision to discharge her.

107. The Defendants' intentional, unlawful discrimination was created, perpetrated, and/or tolerated by the Defendants' officials, managers, and employees.

108. Defendants' treatment of Clampitt, considered in its totality and cumulatively, as outlined in the above paragraphs of this claim and Complaint, is a direct, intentional, and materially adverse action constituting unlawful employment discrimination prohibited by the ADA.

109. Defendant's treatment of Clampitt constitutes (1) unlawful intentional discrimination in violation of the ADA, 42 U.S.C. § 12112(a), 42 U.S.C. § 12112(b)(4); and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a (a)(1), (b)(2)(3), (d)(1) (2).

**SECOND CLAIM**

**[Unlawful Sex Discrimination in Violation of Title VII]**

110. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

111. This Second Claim is for sex discrimination in violation of Title VII.

112. Title VII prohibits an employer from discharging any individual or otherwise discriminating against any person regarding her compensation, terms, conditions, or privileges of employment, because of her sex. 42 U.S.C. § 2000e-2(a)(1).

113. Also, Title VII prohibits an employer from limiting, segregating, or classifying an employee in any way which would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because of her sex. 42 U.S.C. § 2000e-2(a)(2).

114. Clampitt, a woman, belongs to a protected Title VII class because of her sex.

115. At the time of Defendants' adverse employment actions, Clampitt was "qualified" for (1) the Community Manager position at the RLC/SPR Littleton Senior Center, (2) the Community Manager position at the RLC/SPR Littleton Senior Center serving with a Special Assignment Manager or an Assistant Community Manager, (3) Community Manager positions at other locations within the RLC/SPR organizations, and (4) Community Manager positions at other locations within the RLC/SPR organizations, serving with a Special Assignment Manager or an Assistant Community Manager.

116. The Defendants took multiple adverse employment actions against Clampitt, including but not limited to terminating her from employment. Clampitt incorporates and reasserts the adverse employment actions taken by Defendants against her as stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

117. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that sex was a determining factor in Defendants' decision to discharge her.

118. Clampitt is aware of RLC/SPR assigning a male Community Manager, an Assistant Manager, or a Special Assignment Manager to work with because the Community Manager's wife (a woman) could not work.

119. Clampitt is aware of Panda Hirabayashi, a male, serving as a Community Manager. When his co-Community Manager could no longer serve in her postion,

RLC/SPR assigned him to a Special Assignment Manager [SAM] position.

120. Upon information and belief, the Defendants treated male Community Managers, who had co-Community Managers who could no longer work as Co-Community Managers, more favorably than the Defendants treated Clampitt.

121. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

122. Defendants' justifications for the adverse employment actions are unworthy of credence, and Defendants did not act for any asserted non-discriminatory reasons.

123. Clampitt's termination of employment and Defendants' adverse employment actions, occurred under circumstances raising a reasonable inference that sex was a determining factor in Defendants' decision to discharge her and take the adverse employment actions against her.

124. The Defendants' intentional, unlawful discrimination was created, perpetrated, and/or tolerated by Defendants' officials, managers, and employees.

125. Defendants' treatment of Clampitt, considered in its totality and cumulatively, as outlined in the above paragraphs of this claim and Complaint, is a direct, intentional, and materially adverse action constituting unlawful employment discrimination based on sex in violation of Title VII.

126. Defendant's treatment of Clampitt constitutes (1) unlawful intentional discrimination based on sex in violation of Title VII. 42 U.S.C. Section 2000e– 2(a)(1)(2); and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section

1981a (a)(1), (b)(2)(3),(d)(1) (2).

**THIRD CLAIM**

**[Unlawful Age Discrimination in Violation of the ADEA]**

127. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

128. The ADEA prohibits age discrimination in employment.

129. The ADEA prohibits an employer from failing or refusing to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).

130. Also, the ADEA prohibits an employer from limiting, segregating, or classifying its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's age. 29 U.S.C. § 623(a)(2).

131. Clampitt's belongs to the protected ADEA class because she is over forty years of age.

132. At the time of Defendants' adverse employment actions, Clampitt was "qualified" for (1) the Community Manager position at the RLC/SPR Littleton Senior Center, (2) the Community Manager position at the RLC/SPR Littleton Senior Center serving with a Special Assignment Manager or an Assistant Community Manager, (3) Community Manager positions at other locations within the RLC/SPR organizations, and (4) Community Manager positions at other locations within the RLC/SPR

organizations, serving with a Special Assignment Manager or an Assistant Community Manager.

133. The Defendants took multiple adverse employment actions against Clampitt, including but not limited to terminating her from employment. Clampitt incorporates and reasserts the adverse employment actions taken by Defendants against her as stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

134. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that age was a determining factor in Defendants' decision to discharge her and take the adverse employment actions against her.

135. Defendants replaced Clampitt and her husband as co-Community Managers with David Diffenderfer and Teri Bradshaw, a woman.

136. Defendants treated Panda Hirabayashi, a male who is significantly younger than Clampitt, more favorably than the Defendants treated Clampitt.

137. Hirabayashi served as a Community Manager. When his co-Community Manager could no longer serve in her postion, RLC/SPR assigned him to a Special Assignment Manager [SAM] position.

138. Upon information and belief, the Defendants treated Community Managers, who are younger than Clampitt, who had co-Community Managers who could no longer work as Co-Community Managers, more favorably than the Defendants treated Clampitt

139. Defendant intentionally and willfully discriminated against Clampitt because of

her age by taking the above continual, intentional, willful cumulative, and increasingly severe, adverse, and discriminatory employment actions.

140. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

141. Defendants' justifications for the adverse employment actions are unworthy of credence and did not act for any asserted non-discriminatory reasons.

142. Defendant's treatment of Clampitt constitutes (1) unlawful intentional discrimination based on age in violation of the ADEA, 29 U.S.C. § 623(a)(1)(2), and (2) willful unlawful discriminatory practices in violation of 29 U.S.C. § 623(a)(1)(2), and 29 U.S.C. § 216(b).

## FOURTH CLAIM

**[Unlawful Disability Discrimination in Violation of CADA]**

143. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

144. This Fourth Claim is for disability discrimination under the CADA

145. CADA prohibits disability discrimination in employment.

146. CADA provides: It is a discriminatory or an unfair employment practice for an employer to refuse to hire, to discharge, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any individual otherwise qualified because of **disability, sex, or age**. C.R.S. § 24-34-402(1)(A)(I).

147. Clampitt specifically incorporates all prior allegations in her First Claim for Relief, alleging disability discrimination under the ADA, and all prior paragraphs of this Complaint.

**FIFTH CLAIM**

**[Unlawful Sex Discrimination in Violation of CADA]**

148. Clampitt incorporates all prior paragraphs of the Complaint and reasserts the prior paragraphs herein.

149. This Fifth Claim is for sex discrimination under the CADA.

150. CADA prohibits sex discrimination in employment. C.R.S. § 24-34-402(1)(A)(I).

151. Clampitt specifically incorporates all prior allegations in her Second Claim for Relief, alleging sex discrimination under Title VII and all prior paragraphs of this Complaint.

**SIXTH CLAIM**

**[Unlawful Age Discrimination in Violation of CADA]**

152. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

153. This Sixth Claim is for sex discrimination under the CADA.

154. CADA prohibits age discrimination in employment. C.R.S. § 24-34-402(1)(A)(I).

155. Clampitt specifically incorporates all prior allegations in her Third Claim for Relief, alleging age discrimination under the ADEA and all prior paragraphs of this

Complaint.

## SEVENTH CLAIM

### [Aiding and Abetting and Attempting to Commit Disability, Sex, and Age Discrimination in Violation of Colorado's Anti-Discrimination Act Against Defendant Steve Mueller in his Individual Capacity]

156. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

157. This Seventh Claim for Relief is asserted against Defendant Steve Mueller in his individual capacity.

158. CADA provides that it is a discriminatory or unfair employment practice:

> (e) For any person, whether or not an employer, or the employees or members thereof:
>
> (I) To aid, abet, incite, compel, or coerce the doing of any act defined in by this section to be a discriminatory or unfair employment practice;
> . . . .
>
> (III) To attempt, either directly or indirectly, to commit any act defined in this section to be a discriminatory or unfair employment practice. C.R.S. § 24-34-402(1)(e)(I)(III).

159. Defendant Mueller is a person and an employee of the corporate Defendants under C.R.S. § 24-34-402(1)(e).

160. At the time of Defendants' adverse employment actions, Clampitt was "qualified" for (1) the Community Manager position at the RLC/SPR Littleton Senior Center, (2) the Community Manager position at the RLC/SPR Littleton Senior Center serving with a Special Assignment Manager or an Assistant Community Manager, (3) Community Manager positions at other locations within the RLC/SPR organizations,

and (4) Community Manager positions at other locations within the RLC/SPR organizations, serving with a Special Assignment Manager or an Assistant Community Manager.

161. At all material times, Clampitt performed her Community Manager postion satisfactorily.

162. As described in this Complaint, Defendant Mueller aided, abetted, incited, compelled, or coerced the corporate Defendants in committing the discriminatory practices based on disability, sex, and age.

163. As described in this Complaint, Defendant Mueller committed discriminatory and unfair employment practices based on disability, sex, and age.

164. As described in this Complaint, Defendant Mueller aided, abetted, incited, compelled, or coerced the corporate Defendants when the corporate Defendants took the discriminatory multiple adverse employment actions against Clampitt, based on disability, sex, and age, including but not limited to terminating her from employment; actions stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

165. Defendant Mueller committed the discriminatory and unfair employment the discriminatory multiple adverse employment actions against Clampitt, based on disability, sex, and age, including but not limited to terminating her from employment; actions stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

166. Defendant Mueller was instrumental in taking the above adverse employment actions against Clampitt based on disability, sex, and age.

167. Defendant Mueller was the **sole and only person and the sole and only person and/or employee of the Defendant:**

(1) Who, on November 6, 2023, scheduled the meeting with Clampitt to be held on November 7, 2023, and

(2) Who took and communicated the above adverse employment actions against Clampitt and stated the broad scope of these adverse employment actions based on disability, sex, and age, including but not limited to terminating her from employment; actions stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

168. Defendant Mueller's actions were motivated by discriminatory animus against Clampitt.

169. Defendant Mueller intended that his actions would cause and result in the adverse employment actions against Clampitt, based on disability, sex, and age, including but not limited to terminating her from employment; actions stated in the subheading ***"(1) Defendants' Adverse Employment Actions***" in Clampitt's First Claim for Relief.

170. The effect of Defendant Mueller's practice of aiding and abetting discrimination deprived Clampitt of equal employment opportunities and otherwise adversely affected her employment status because of her disability status, sex, ND and

age. pregnancy, and disability.

171. Defendant Mueller and only Mueller told Clampitt the alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

172. Defendant Mueller's justifications for the adverse employment actions are unworthy of credence and he did not act for any asserted non-discriminatory reasons.

173. Defendant Mueller's unlawful employment practices were intentional and willful.

174. Defendant Mueller engaged in the unlawful employment practices described above with malice, willfulness, or in reckless disregard to Clampitt's protected civil rights.

175. Defendant Mueller's unlawful acts toward Clampitt have caused and continue to cause her economic and non-economic damage and injuries, including pain and suffering, inconvenience, emotional distress, humiliation, embarrassment, impairment of quality of life, past and future economic losses, including loss of earnings and loss of earning capacity, and other losses.

## VII. <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff Martha Clampitt respectfully requests this Court to enter judgment in her favor and against the Defendants on all claims asserted in this Complaint and Request for Jury Trial, and in addition, for the following relief:

(1) To enter a judgment for Clampitt and against the corporate Defendants, finding the acts of these Defendants are continuing and intentional association

discrimination, in violation of the ADA.

(2) To enter a judgment for Clampitt and against the corporate Defendants, finding the acts of these Defendants are continuing and intentional sex discrimination in violation of Title VII.

(3) To enter a judgment for Clampitt and against the corporate Defendants, finding the acts of these Defendants are continuing and willful and intentional age discrimination in violation under the ADEA.

(4) To enter a judgment for Clampitt and against Defendant Mueller for engaging in a willful and intentional violation, with malice, of C.R.S. § 24-34-402(1)(e)(I)(III).

(5) To award Clampitt the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled under the ADA, Title VII, the ADEA, and CADA.

(6) To award Clampitt compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future monetary losses, and all loss of compensatory damages to which she is entitled under the ADA, Title VII, the ADEA, and CADA.

(7) To award Clampitt punitive damages for which she is entitled for the corporate Defendants' acting with malice or reckless disregard of her legally protected rights under the ADA, Title VII, and CADA.

(8) To award Clampitt liquidated damages under the ADEA and CADA for which

she is entitled for the corporate Defendants' committing willful violations of the ADEA or acting in reckless disregard of her legally protected rights under the ADEA.

(9) To award Clampitt all damages under CADA, including economic, noneconomic damages, and punitive and liquidated damages, against Defendant Mueller for acting with malice or willfulness or in reckless disregard of her legally protected rights under CADA.

(10) To award Clampitt against under the ADA, Title VII, the ADEA, and CADA, (a)reinstatement, or in the alternative, front pay, (b) attorney fees and costs, and (c) pre-judgment and post-judgment interest at the proper rate provided by law.

(11) To award Clampitt all other legal and equitable relief to which Clampitt is entitled under any law that this Court considers just, equitable, and proper.

## VIII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. §§ 2000e-5, 2000e-6, 2000e-8, and 2000e-9, and 29 U.S.C. § 626(c)(2), and CADA, and all applicable laws providing for a right to trial by jury, Clampitt requests a jury trial of all claims and issues.

Dated: April 14, 2025.

Respectfully submitted,

*/s/ Steven L. Murray*
Murray Law, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

Plaintiff's Address:

2110 Proffitt Road
Manakin Sabot, VA 23103