**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-01182-NYW-TPO

MARTHA CLAMPITT,

An Individual,

Plaintiff,

v.

RESORT LIFESTYLE COMMUNITIES, INC.

A Nebraska Corporation

and

SKY POINTE RETIREMENT COMMUNITIES LLC,
d/b/a SKY POINTE RETIREMENT RESORT.

Defendants.

---

# EXHIBIT NO. 2

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-01182-NYW-TPO

MARTHA CLAMPITT,

An Individual, Plaintiff,

v.

RESORT LIFESTYLE COMMUNITIES, INC.

A Nebraska Corporation

and

SKY POINTE RETIREMENT COMMUNITIES LLC, d/b/a
SKY POINTE RETIREMENT RESORT.

Defendants.

---

**AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL**

---

Plaintiff Martha Clampitt [Clampitt], through her attorney, Steven L. Murray of Murray Law, LLC, submits her Amended Complaint and Request for Jury Trial against Defendants, Resort Lifestyle Communities, Inc., and Sky Pointe Retirement Communities LLC, d/b/a Sky Pointe Retirement Resort [SPR].

**INTRODUCTION**

1. This case is an employment discrimination action under (1) the Americans with Disabilities Act of 1990 [ADA], 42 U.S.C. § 12101, et seq., as amended, including the Americans with Disabilities Act Amendments Act of 2008, (2) Title VII of the Civil Rights

Act of 1964 [Title VII], 42 U.S.C. § 2000e, et seq., as amended, (3) the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C. § 621, et seq., as amended, and (4) the Colorado Anti-Discrimination Act [CADA], C.R.S. § 24-34-402, et seq., as amended.

2. Clampitt, a woman, is sixty-five years of age.

3. Clampitt is a former employee of Defendants Resort Lifestyle Communities, Inc., and Sky Pointe Retirement Communities LLC, d/b/a Sky Pointe Retirement Resort [Defendants].

4. The Defendants terminated Clampitt's employment on or about November 7, 2023.

5. Clampitt served as a Community Manager for the corporate Defendants' senior living centers across the nation. She managed these properties as a Co-Community Manager with her husband, ~~Roger~~ Richard Whitener [Whitener].

6. At the time of her employment termination, Clampitt was managing the ~~corporate~~ Defendants' senior living center property in Littleton, Colorado, named: "*Resort Lifestyle Communities, Sky Pointe Retirement Resort*." ["RLC/SPR Littleton Senior Center" or "Senior Living Center"].

7. On November 7, 2023, the Defendants took multiple adverse employment actions against Clampitt, including but not limited to (1) terminating her employment, (2) ordering Clampitt and her husband to leave the property in five days, knowing they had no home or alternative home residence, and her husband was severely ill, and (3) telling her, "**you do not fit our model anymore**" and "**there is no place for you**," and effectively banning her from all employment with the Defendants in any position in any

location, and (4) denying her request to remain employed by the Defendants, including remaining employed in a different capactiy and/or at a different location.

## I. PARTIES

8. Clampitt is a United States citizen.

9. At the time of the events in issue, Clampitt lived and worked in Littleton, Colorado. Currently, she lives in Virginia.

10. Defendant Resort Lifestyle Communities [RLC] is a Nebraska corporation with its headquarters in Lincoln, Nebraska.

11. RLC conducts business in Colorado, with a registered agent in Brighton, Colorado.

12. Defendant Sky Pointe Retirement Communities LLC, d/b/a Skye Pointe Retirement Communities LLC, [SPR], is a Nebraska corporation with its headquarters in Lincoln, Nebraska.

13. SPR conducts business in Colorado, with a registered agent in Brighton, Colorado.

14. SPR and RLC employed Clampitt.

15. RLC and SPR are intertwined corporate entities.

16. RLC and SPR have the same: (1) business address in Lincoln, Nebraska: 701 S. 82nd Street, Lincoln, Nebraska, and (2) registered business agent in Colorado: Registered Agency Solutions, 36 S. 18th Avenue, Suite D, Brighton, CO, 80601. During Clampitt’s work at the RLC/SPR Littleton Senior Center, RLC and SPR each issued her (1) a W-2 tax form in 2023, and (2) pay checks in 2023.

17. RLC assigned Clampitt to her multiple Community Manager positions in

different locations.

18. Joe Armstrong, RLC Director of Field Operations, was her direct supervisor.

19. RLC officials communicated with Clampitt on employment-related issues during her employment. These officials included, but were not limited to, Arlin Halstead, Breck Collingsworth, and Steve Mueller.

20. At all times in issue, Arlin Halstead served as the Chief Executive Officer of RLC.

21. At all times in issue, Breck Collingsworth was the Owner of RLC.

22. At all times in issue, Steve Mueller served as the Chief Operating Officer of RLC and/or an official and/or manager with RLC.

23. As described in detail herein, on November 7, 2023, the ~~corporate~~ Defendants ~~and Defendant Mueller~~ took multiple adverse actions against Clampitt, including but not limited to terminating her employment.

## II. JURISDICTION AND VENUE

24. This Court has jurisdiction under 28 U.S.C. §§ 1331,1343(a)(3)(4).

25. Jurisdiction is asserted under the ADA, 42 U.S.C. § 12117(a), and Title VII, 42 U.S.C. §§ 2000e, 2000e-5, and 2000e-5(f)(1)(3), including the Civil Rights Act of 1991, 42 U.S.C. § 1981a (a)(1), (b)(2)(3)(D), (c)(1)(2), and (d)(1)(A)(2), the ADEA, 29 U.S.C. § 626(b), and the CADA, C.R.S. § 24-34-306.

26. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Plaintiff's four claims under CADA.

27. Venue is proper in this Court's Judicial District.

28. The claims in issue, including all alleged unlawful employment actions, arose

in the Judicial District of this Court.

29. At all times in issue, Clampitt lived and worked in this Court's Judicial District.

30. At all times in issue, the Defendants conducted business in this Court's Judicial District.

31. Title VII includes a specific venue provision, 42 U.S.C. § 2000e-5(f)(3).

32. Under Title VII's venue provision, venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because (1) the unlawful employment practices alleged to have been committed by Defendants were committed in Colorado, within this Court's Judicial District, (2) Clampitt, the aggrieved person, would have worked in Colorado, within this Court's Judicial District, but for the alleged unlawful employment practices and (3) the Defendants conduct business in Colorado and are thereby found in the state for purposes of Title VII.

33. The plaintiff's ADA claim is governed by the specific venue provision of 42 U.S.C. § 2000e-5(f)(3). See 42 U.S.C. § 12117(a) [establishing that the powers, remedies, and procedures outlined in Title VII, 42 U.S.C. § 2000e-5, shall be the powers, remedies, and procedures this subchapter provides to any person alleging discrimination ~~on the basis~~ based on disability in violation of any provision of this chapter].

34. Venue for the plaintiff's ADEA claim is governed by 28 U.S.C. § 1391(b)(2).

35. Under the ADEA's venue provision, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to all Plaintiff's claims occurred within the Judicial District of this Court.

36. Clampitt was an employee of the Defendants under the ADA, Title VII, the

ADEA, and CADA.

37. RLC and SPR are employers under the ADA, Title VII, the ADEA, and CADA.

## III. ADMINISTRATIVE PROCEDURES

38. Before filing this action, Clampitt timely, properly, and lawfully exhausted all required administrative prerequisites, procedures, and remedies.

39. Clampitt filed her charges against RLC and SPR with the Colorado Civil Rights Division [CCRD], which were dually filed with the Equal Employment Opportunity Commission. [EEOC].

40. Clampitt alleged discrimination by the Defendants violating the ADA, Title VII, ADEA, and the CADA, in her charges with the CCRD/EEOC.

41. On January 15, 2025, the CCRD emailed Notices of Early Right to Sue letters concerning Clampitt's CCRD charges against RLC and SPR.

42. On April 10, 2025, the CCRD emailed Amended Notices of Early Right to Sue letters concerning Clampitt's CCRD charges against RLC and SPR.

43. On February 3, 2025, the EEOC mailed Notice of Right to Sue letters to Clampitt and emailed her counsel, concerning her EEOC charges against RLC and SPR.

44. This action is timely filed because it is filed within ninety days of Clampitt's receipt of the CCRD Notices of Early Right to Sue letters and the EEOC Notice of Right to Sue letters for her charges against RLC and SPR.

## IV. GENERAL ALLEGATIONS

45. The Defendants employed Clampitt from January 2019 through November 7, 2023.

46. Clampitt served as a Community Manager of multiple RLC Communities. She served in these positions with Whitener, her husband.

**A. First Period of Employment at RLC/SPR Littleton Senior Center**

47. Before the period in issue, RLC directed Clampitt and her husband to serve as Co-Community Managers in a new community, the Sky Pointe Retirement Resort in Littleton, Colorado.

48. From May 2019 through December 2019, Clampitt and her husband lived in an RLC-provided facility. They worked in an RLC trailer on the property until the facility opened on or about December 22, 2019. When the facility opened, they moved into a new two-bedroom apartment in the community. They served as Community Managers until March 2021, at which time they followed RLC's directive and accepted a new assignment from RLC in Virginia.

49. Clampitt and her husband served as Community Managers at an RLC senior living facility in Virginia until October 2022, when they followed RLC's directive to return to the RLC/SPR Littleton Senior Center.

**B. Key Second Period of Employment at RLC/SPR Littleton Senior Center: October 2022-November 2023**

50. In October 2022, Clampitt and Whitener began serving as Co-Community managers at the RLC/SPR Littleton Senior Center for the second time.

51. The Center has about 128 apartments with over 150 tenants.

52. Clampitt's salary was about $68,000.00, plus a $580.00 monthly insurance stipend.

53. In addition to the salaries the Defendants paid to Clampitt and her husband,

the Defendants provided Clampitt and her husband with housing at the RLC/SPR Littleton Senior Center. The estimated market rent for their apartment was $6500.00 per month. This housing benefit included all meals, three meals a day prepared by a chef, and a housekeeper.

***(1) January 2023 – May 2023***

54. In January 2023, Whitener received a diagnosis of liver cancer. In February 2023, Whitener began receiving radiation treatment for his cancer in Phoenix, Arizona.

55. In mid-April 2023, Clampitt and Whitener moved to Phoenix for Whitener to continue treatment and wait for a liver transplant. RLC approved this relocation for Whitener's treatment.

56. On April 29, 2023, Whitener received a liver transplant. He continued receiving care in Phoenix through June 2023, when he and Clampitt returned to the RLC/SPR Littleton Senior Center.

***(2) June 2023 – November 2023***

57. Upon Clampitt and Whitener's return to the RLC/SPR Littleton Senior Center in June 2023, Clampitt worked full-time. Whitener did not work because of his illness.

58. Clampitt worked full-time and performed all her duties from June 2023 through November 7, 2023.

59. In August 2023, RLC assigned Panda Hirabayashi [Hirabayashi], a male, as a Special Assignment Manager [SAM] to Sky Pointe. He performed the same role as Clampitt's husband had performed in his capacity as a Co-Community Manager.

60. Hirabayashi is younger than Clampitt and her husband.

61. Hirabayashi is neither disabled nor associated with a disabled person.

62. Clampitt and Hirabayashi worked well together. They effectively performed all the duties and delivered all the services previously performed and delivered by Clampitt and her husband. There was no drop in the efficiency and quality of services RLC/SPR Littleton Senior Center provided to its residents and the community.

63. Never did Whitener: (1) appear in the RLC/SPR Littleton Senior Center in any manner embarrassing to him, the Center, Clampitt, RLC, SPR, or any community member, resident, or visitor in terms of his appearance or conduct, or (2) engage in any misconduct.

***(3) November 6-7, 2023: Termination of Employment***

64. On November 6, 2023, Halstead, RLC's Chief Executive Officer, sent Clampitt a text message, telling her he was in town with Mueller, RLC's Chief Operating Officer, and they wanted to stop by and meet with her the next morning, November 7, 2023.

65. On or about 7:30 a.m. on November 7, 2023, Mueller and Halstead met with Clampitt at the RLC/SPR Littleton Senior Center. They asked for Clampitt to meet in a conference room rather than her office or the lobby.

66. In the conference room, Mueller repeatedly told ~~Ms.~~ Clampitt the reason for the meeting, stating: "**You do not fit our model anymore.**" He explained: **"There is no place for you."**

67. Defendants did not describe their model to Clampitt or the basis and/or reasons for the model they applied to Clampitt to terminate her employment and bar her from employment in any capacity within the Defendants' organizations.

68. Clampitt replied: "You must be kidding," and "I know there is a place for me at RLC."

69. Mueller insisted there was no place for Clampitt with the Defendants. When she responded, "There has to be," he replied: **"You are not listening to me; in three hours, there will be new managers here to replace you."**

70. Mueller and Clampitt continued with a similar exchange.

71. Clampitt explained that RLC had a Special Assignment Manager, Panda Hirabayashi, working at the RLC/SPR Littleton Senior Center, and everything was running well.

72. Clampitt told Mueller and Halstead the Defendants had assigned Assistant Managers and Special Assignment Managers to other Community Managers when a Co-Community Manager could not work.

73. Defendants, through Mueller, responded to Clampitt: **“We are not doing that with you.”**

74. The Defendants had assigned Assistant Managers and Special Assignment Managers to work with other Community Managers when one co-Community Manager could not work.

75. Defendants assigned Hirabayashi to a roving type of solo Special Assignment Manager [SAM] position. In this role, Hirabayashi, as a solo SAM, was permitted to join other Community Managers at Defendants’ properties even though he did not have a partner. Defendants refused to give Clampitt this position or any similar position.

76. The Defendants told Clampitt (1) “**you do not fit our model anymore**,” (2) “**there is no place for you**,” in the Defendants' organizations, and (3) Defendants would not assign an Assistant Manager or Special Assignment Manager to work with Clampitt at the RLC/SPR Littleton Senior Center or any Center in the RLC/SPR organizations.

77. Mueller told Clampitt RLC would pay her salary and benefits until February 2024.

78. Mueller explained that RLC requires an employee terminated for cause to move out of the property in three days; however, it did not require her to move in ~~five~~ three days. Mueller gave Clampitt and her husband five days to vacate the property.

79. Mueller told her, "You took that better than I thought you would." At this point, Clampitt began to cry.

80. Clampitt walked the two men out of the property. In the lobby, Halstead said, "**Everything looks good inside and outside, and you have done a great job**." Clampitt replied: "You have got to be kidding." Mr. Halstead replied that his statement was "not appropriate to say."

81. At all times, Clampitt performed her duties satisfactorily. She did not engage in any improper or unprofessional conduct.

82. Defendants replaced Clampitt and her husband as Community Managers with David Diffenderfer, a man, and Teri Bradshaw, a woman.

83. Neither Diffenderfer nor Branshaw is disabled nor associated with a disabled person.

84. Diffenderfer and Bradshaw are younger than Clampitt.

***(4) Events After Employment Termination: November 8, 2023 - February 15, 2024***

85. Clampitt and Whitener left Sky Point~~e~~. They moved from Colorado to Virginia from November 8-12, 2023.

86. RLC financially assisted Clampitt and Whitener with their move by paying for

their travel expenses and a POD storage service.

87. RLC paid Ms. Clampitt's salary for (1) November - December 2023, (2) January 2024, and (3) February 1-5, 2024.

88. As a direct, foreseeable, and proximate result of Defendants' unlawful, intentional, and willful discrimination, Clampitt suffered compensatory damages and injuries, including but not limited to loss of employment, emotional pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, fear, and loss of enjoyment of life.

89. As a direct, foreseeable, and proximate result of Defendants' unlawful, intentional, and willful discrimination, Clampitt suffered economic damages and losses, including but not limited to loss of employment, lost earnings and potential earnings, including an actual loss of wages, income, benefits, diminution of earning capacity, loss of actual retirement benefits, and future monetary losses.

90. Defendants' unlawful employment practices were willful or done with malice or reckless indifference to Clampitt's rights under the laws of the United States and Colorado to be free from disability, sex, and age discrimination in employment.

91. The Defendants’ intentional and willful unlawful discrimination was created, perpetrated, and/or tolerated by the Defendants’ officials, managers, and employees.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM

### [Unlawful Known Disability Association Discrimination In Violation of the ADA]

92. Clampitt incorporates and restates all allegations previously asserted in this

Complaint as though fully incorporated herein.

93. This First Claim for unlawful disability discrimination under the ADA is based on the Defendants' discrimination against Clampitt, a qualified individual under the Act, because of the known disability of Whitener, her husband, with whom Clampitt is known to have a relationship and association. 42 U.S.C. § 12112(a); 42 U.S.C. § 12112(b)(4).

94. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability regarding job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

95. The ADA's term "discriminate against a qualified individual on the basis of disability" specifically includes: "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the ***known disability of an individual with whom the qualified individual is known to have a relationship or association***." 42 U.S.C. § 42 U.S.C. § 12112(b)(4). [bold emphasis and italics supplied].

96. Under the ADA, it is unlawful to discriminate against an employee because of her association or relationship with a person with a disability.

97. Clampitt belongs to a protected ADA class because of her known association and relationship with Whitener, her husband, a person with a known disability.

98. The ADA association discrimination claim is intended to protect qualified individuals from adverse job actions based on unfounded stereotypes and assumptions arising from an employee's relationship or association with a disabled person.

99. The Defendants' reliance on Clampitt "not fitting [their] model anymore" and/or "there is no place for you" is reliance on a stereotype based on Clampitt's known

association and relationship with her husband, who has a known disability.

100. Before Clampitt's husband became disabled, the Defendants had no problems with her performance or continued service as a Community Manager ~~for~~ years.

### A. Clampitt is Qualified

101. At the time of Defendants' adverse employment actions, Clampitt was "qualified" for (1) the Community Manager position at the RLC/SPR Littleton Senior Center, (2) the Community Manager position at the RLC/SPR Littleton Senior Center serving with a Special Assignment Manager or an Assistant Community Manager, (3) Community Manager positions at other locations within the RLC/SPR organizations, (4) Community Manager positions at other locations within the RLC/SPR organizations, serving with a Special Assignment Manager or an Assistant Community Manager, and (5) Special Assignment Manager or an Assistant Community Manager positions, working with a Community Manager, at (a) the RLC/SPR Littleton Senior Center, and/or (b) other RLC/SPR locations.

### B. Defendants' Adverse Employment Actions

102. The Defendants subjected Clampitt to adverse employment actions by

(1) Terminating her employment.

(2) Requiring her to leave the property in five days, knowing she and her husband had no home or residence, and her husband was severely ill.

(3) Refusing to permit her to continue working as the Community Manager at the RLC/SPR Littleton Senior Center with a Special Assignment Manager or Assistant Manager assigned by RLC/SPR to work with her.

(4) Stating "**you do not fit our model anymore**" and "**there is no place for you,**" Defendants effectively:

(a) Refused to permit her to continue working as the Community Manager at any RLC/SPR Senior Center or in any location.

(b) Refused to permit her to continue working as a Community Manager at any RLC/SPR Senior Center or in any location with a Special Assignment Manager or Assistant Manager assigned by RLC/SPR to work with her.

(c) Refused to permit her to continue working as a Special Assignment Manager or an Assistant Community Manager, working with a Community Manager, at (i) the RLC/SPR Littleton Senior Center, and/or (ii) other RLC/SPR locations.

(d) Refused to provide her employment in any capacity anywhere in the ~~RLC/SPR~~ Defendants' organizations.

(e) Barred and prohibited her from applying for any position in any capacity in any location in the Defendants' ~~RLC/SPR~~ organizations.

(f) Banned her from employment in any position in any capacity in any location in the Defendants' ~~RLC/SPR~~ organizations.

103. Defendants knew at all relevant times, including at the time of their adverse employment actions against Clampitt, that (1) Whitener, her husband, has a known disability, (2) Clampitt has a known association and relationship ~~with she associated~~ with her husband, and (3) they lived together on the RLC/SPR Littleton Senior Center property.

104. When Defendants told Clampitt she must leave the property with her husband and terminated her employment, Clampitt's husband was disabled. He had severe medical conditions harming his kidneys and liver functions. He had liver cancer, and he was recovering from a liver transplant and related medical conditions.

105. The Defendants were explicitly aware of Whitener's known disability, his impairments from his disability, and Clampitt's known association and relationship with Whitener, her husband.

106. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

107. Defendants' justifications for the adverse employment actions are unworthy of credence, and Defendants did not act for any asserted non-discriminatory reasons.

108. Upon information and belief, the Defendants treated Community Managers, who did not have Co-Community Managers with disabilities, more favorably than they treated Clampitt.

109. Upon information and belief, the Defendants treated Community Managers who did not have Co-Community Managers, Assistant Managers, or Special Assignment Managers, with disabilities who could not continue work, more favorably than they treated Clampitt.

110. Upon information and belief, the Defendants treated Community Managers who did not have Co-Community Managers, Assistant Managers, or Special Assignment Managers, who could not continue working for reasons other than a disability, more favorably than the Defendants treated Clampitt.

111. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that her known association and relationship with her husband, a person with a known disability, was a determining factor in Defendants' decision to discharge her, and deny and bar her from all employment with Defendants, and take the above adverse employment actions against her.

112. Defendants' treatment of Clampitt, and its adverse actions against her, considered in their totality and cumulatively, as outlined in the above paragraphs of this claim and Complaint, are direct, intentional, and willful ~~materially~~ adverse actions constituting unlawful employment discrimination prohibited by the ADA.

113. Defendant's treatment of Clampitt is (1) unlawful intentional discrimination in violation of the ADA, 42 U.S.C. § 12112(a), 42 U.S.C. § 12112(b)(4), and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a (a)(1), (b)(2)(3), (d)(1) (2).

**<u>SECOND CLAIM</u>**

**[Unlawful Sex Discrimination in Violation of Title VII]**

114. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

115. This Second Claim is for sex discrimination in violation of Title VII.

116. Title VII prohibits an employer from discharging any individual or otherwise discriminating against any person regarding her compensation, terms, conditions, or privileges of employment, because of her sex. 42 U.S.C. § 2000e-2(a)(1).

117. Also, Title VII prohibits an employer from limiting, segregating, or classifying

an employee in any way which would deprive or tend to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because of her sex. 42 U.S.C. § 2000e-2(a)(2).

118. Clampitt, a woman, belongs to a protected Title VII class because of her sex.

119. Clampitt is qualified for all employment positions with the Defendants as previously discussed in this Amended Complaint. Clampitt incorporates and reasserts all positions for which she is qualified, including but not limited to the positions ~~actions as~~ stated in the previous subheading, ***"A. Clampitt is Qualified"*** in Clampitt's First Claim for Relief.

120. The Defendants took multiple adverse employment actions against Clampitt, including but not limited to terminating her employment. Clampitt incorporates and reasserts all adverse employment actions taken by Defendants against her, including but not limited to the actions stated in the previous subheading, ***"B. Defendants' Adverse Employment Actions",*** in Clampitt's First Claim for Relief.

121. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that sex was a determining factor in Defendants' decision to discharge her.

122. When Hirabayashi, a younger male Community Manager, an Assistant Manager, or a Special Assignment Manager, did not have a partner, Assistant Manager, Special Assignment Manager, or Co-Community Manager, or had a partner, Assistant Manager, Special Assignment Manager, or Co-Community Manager who could not work, the Defendants (1) assigned him to work with Clampitt as a Special Assignment Manager, and (2) did not terminate his employment.

123. Defendants assigned Hirabayashi, a male, to serve in a solo, floating Special Assignment Manager [SAM] position at Defendants' locations, thereby permitting him to continue his employment with RLC/SPR.

124. Defendants did not offer Clampitt the same opportunities they offered and/or provided to Hirabayashi.

125. Upon information and belief, Defendants offered or provided other male employees the same or similar opportunities they offered or provided to Hirabayashi, while Defendants did not offer or provide the same or similar opportunities to Clampitt.

126. When Clampitt's Co-Community Manager could not work, the Defendants:

(1) Terminated her employment,

(2) Required her to leave the property within five days,

(3) Did not permit Clampitt to continue her employment by working as a solo Community Manager, Co-Community Manager, ~~an~~ Assistant Manager, or ~~a~~ Special Assignment Manager, at any location.

(4) Effectively banned, barred, and denied Clampitt from employment with Defendants in any capacity in any location.

(5) Effectively barred Clampitt from applying for any position with the Defendants in the Defendants' organizations.

127. Upon information and belief, the Defendants treated male Community Managers, who had Co-Community Managers, Assistant Managers, or Special Assignment Managers who could not work, more favorably than the Defendants treated Clampitt.

128. Upon information and belief, the Defendants provided and/or offered male

employees with employment and job opportunities, benefits, and assignments that they did not provide or offer to Clampitt.

129. The Defendants' reliance on Clampitt "not fitting [their] model anymore" and/or "there is no place for you" is reliance on a stereotype based on Clampitt's sex.

130. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

131. Defendants' justifications for the adverse employment actions are unworthy of credence, and Defendants did not act for any asserted non-discriminatory reasons.

132. Defendants' treatment of Clampitt, and its adverse actions against her, considered in their totality and cumulatively, as outlined in the above paragraphs of this claim and Complaint, are direct, intentional, and willful adverse actions constituting unlawful employment discrimination prohibited by Title VII.

133. Defendant's treatment of Clampitt is (1) unlawful intentional discrimination based on sex in violation of Title VII. 42 U.S.C. Section 2000e– 2(a)(1)(2); and (2) intentional, unlawful discriminatory practices in violation of 42 U.S.C. Section 1981a (a)(1), (b)(2)(3),(d)(1) (2).

## <u>THIRD CLAIM</u>

### [Unlawful Age Discrimination in Violation of the ADEA]

134. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

135. The ADEA prohibits age discrimination in employment.

136. The ADEA prohibits an employer from failing or refusing to hire or to

discharge any individual or otherwise discriminate against any individual regarding her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).

137. Also, the ADEA prohibits an employer from limiting, segregating, or classifying its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's age. 29 U.S.C. § 623(a).

138. Clampitt belongs to the protected ADEA class because she is over forty years of age.

139. Clampitt is qualified for all employment positions with the Defendants as previously discussed in this Amended Complaint. Clampitt incorporates and reasserts all positions for which she is qualified, including but not limited to the positions ~~actions as~~ stated in the previous subheading, *"***A. Clampitt is Qualified***",* in Clampitt's First Claim for Relief.

140. The Defendants took multiple adverse employment actions against Clampitt, including but not limited to terminating her employment. Clampitt incorporates and reasserts all adverse employment actions taken by Defendants against her, including but not limited to the actions stated in the previous subheading **"B. Defendants' Adverse Employment Actions"** in Clampitt's First Claim for Relief.

141. Clampitt's termination of employment and Defendants' adverse employment actions occurred under circumstances raising a reasonable inference that age was a determining factor in Defendants' decision to discharge her and take the adverse employment actions against her.

142. Defendants replaced Clampitt and her husband as Co-Community with David Diffenderfer and Teri Bradshaw, a woman.

143. Diffenderfer and Bradshaw are younger than Clampitt and her husband.

144. Defendants treated Panda Hirabayashi, a male who is significantly younger than Clampitt, more favorably than they treated Clampitt.

145. Upon information and belief, the Defendants treated Community Managers, who are younger than Clampitt, who had Co-Community Managers, Assistant Managers, or Special Assignment Managers who could not work, more favorably than the Defendants treated Clampitt.

146. Upon information and belief, the Defendants provided or offered employment and job opportunities, benefits, and assignments to younger employees that they did not provide or offer to Clampitt.

147. The Defendants' reliance on Clampitt "not fitting [their] model anymore" and/or "there is no place for you" is reliance on a stereotype based on Clampitt's age.

148. Defendants' alleged reasons for terminating Clampitt's employment and taking the above adverse employment actions were: (1) **"you do not fit our model anymore,"** and (2) **"there is no place for you."**

149. Defendants' justifications for the adverse employment actions are unworthy of credence and did not act for any asserted non-discriminatory reasons.

150. Defendants' treatment of Clampitt, and its adverse actions against her, considered in their ~~its~~ totality and cumulatively, as outlined in the above paragraphs of this claim and Complaint, ~~is a~~ are direct, intentional, and willful, and adverse actions constituting unlawful employment discrimination prohibited by the ADEA.

151. Defendant's treatment of Clampitt constitutes is (1) unlawful intentional discrimination based on age in violation of the ADEA, 29 U.S.C. § 623(a)(1)(2), and (2) willful unlawful discriminatory practices in violation of 29 U.S.C. § 623(a)(1)(2), and 29 U.S.C. § 216(b).

**FOURTH CLAIM**

**[Unlawful Disability Discrimination in Violation of CADA]**

152. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

153. This Fourth Claim is for disability discrimination under the CADA

154. CADA prohibits disability discrimination in employment.

155. CADA provides: It is a discriminatory or unfair employment practice for an employer to refuse to hire, to discharge, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any individual otherwise qualified because of **disability, sex, or age**. C.R.S. § 24-34-402(1)(A)(I).

156. Clampitt specifically incorporates all prior allegations in her First Claim for Relief, alleging disability discrimination under the ADA, and all prior paragraphs of this Complaint.

**FIFTH CLAIM**

**[Unlawful Sex Discrimination in Violation of CADA]**

157. Clampitt incorporates all prior paragraphs of the Complaint and reasserts the prior paragraphs herein.

158. This Fifth Claim is for sex discrimination under the CADA.

159. CADA prohibits sex discrimination in employment. C.R.S. § 24-34-

402(1)(A)(I).

160. Clampitt specifically incorporates all prior allegations in her Second Claim for Relief, alleging sex discrimination under Title VII and all prior paragraphs of this Complaint.

**SIXTH CLAIM**

**[Unlawful Age Discrimination in Violation of CADA]**

161. Clampitt incorporates all prior paragraphs and reasserts the prior paragraphs herein.

162. This Sixth Claim is for age discrimination under the CADA.

163. CADA prohibits age discrimination in employment. C.R.S. § 24-34-402(1)(A)(I).

164. Clampitt specifically incorporates all prior allegations in her Third Claim for Relief, alleging age discrimination under the ADEA and all prior paragraphs of this Complaint.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Martha Clampitt respectfully requests this Court to enter judgment in her favor and against the Defendants on all claims asserted in this Complaint and Request for Jury Trial, and in addition, for the following relief:

(1) To enter a judgment for Clampitt and against the Defendants, finding the Defendants' acts are continuing and intentional disability association discrimination, in violation of the ADA and CADA.

(2) To enter a judgment for Clampitt and against the ~~corporate~~ Defendants, finding the Defendants' acts are continuing and intentional sex discrimination in violation of the

Title VII and CADA.

(3) To enter a judgment for Clampitt and against the ~~corporate~~ Defendants, finding the Defendants' acts are continuing and willful and intentional age discrimination in violation of the ADEA and CADA.

(4) To award Clampitt the remedies of damages for back pay, restored benefits, actual monetary damages, loss of employment, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled under the ADA, Title VII, the ADEA, and CADA.

(5) To award Clampitt compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of employment, loss of enjoyment of life, future monetary losses, and all loss of compensatory damages to which she is entitled under the ADA, Title VII, the ADEA, and CADA.

(6) To award Clampitt punitive damages for which she is entitled for the ~~corporate~~ Defendants' acting with malice or reckless disregard of her legally protected rights under the ADA, Title VII, and CADA.

(7) To award Clampitt liquidated damages under the ADEA and CADA for which she is entitled for the Defendants' committing willful violations of the ADEA and/or acting in reckless disregard of her legally protected rights under the ADEA and CADA.

(8) To award Clampitt against under the ADA, Title VII, the ADEA, and CADA, (a) reinstatement, or in the alternative, front pay, (b) attorney fees and costs, and (c) pre-judgment and post-judgment interest at the proper rate given by law.

(9) To award Clampitt all other legal and equitable relief to which Clampitt is entitled under any law that this Court considers just, equitable, and proper.

## VII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. § § 2000e-5, 2000e-6, 2000e- 8, and 2000e-9, and 29 U.S.C. § 626(c)(2), and CADA, and all applicable laws providing for a right to trial by jury, Clampitt requests a jury trial of all claims and issues.

Dated: July 17, 2025.

Respectfully submitted,

*/s/ Steven L. Murray*
Murray Law, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

Plaintiff's Address:

2110 Proffitt Road Manakin
Sabot, VA 23103

CERTIFICATE OF SERVICE

The undersigned certifies on July 17, 2025, a true and correct copy of the above AMENDED COMPLAINT AND REQUEST FOR JURY TRIAL [without marked changes] was filed with the Clerk of the Court using the CM/ECF system as Exhibit No. 2 and as a separate ECF filing to Plaintiff's Unopposed Motion for Leave to File Amended Complaint, which will serve it upon all counsel of record, including counsel for Defendants, listed below:

Phoebe Katherine Schneider
Dinsmore & Shohl LLP
1775 Sherman Street
Suite 2600
Denver, CO 80203
303-831-6956
Email: phoebe.schneider@dinsmore.com
Counsel for the Defendants

Tyler J.M. Parrish, Esq.
Dinsmore & Shohl LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
T 513-977-8362
Email. Tyler.Parrish@Dinsmore.com
Counsel for the Defendants

*/s/Steven L. Murray*
Steven L. Murray
Counsel for Plaintiff